# *COMMERCIAL LEASE AGREEMENT*

## NNN / MONTH-TO-MONTH LEASE

### WITH INDEPENDENT CONTRACTOR SERVICES AGREEMENT PROVISION

| | |
|---|---|
| **Landlord:** | Innerbalance Property Management, LLC |
| **Tenant:** | Innerbalance Health Center, LLC |
| **Lease Type:** | Commercial Triple Net (NNN), Month-to-Month |
| **Effective Date:** | August 15, 2020 |

This Commercial Lease Agreement ("Lease") is entered into by and between Innerbalance Property Management, LLC, a Colorado limited liability company ("Landlord"), and Innerbalance Health Center, LLC, a Colorado limited liability company ("Tenant").

### 1. Lease Date and Effective Date

This Lease is effective as of August 15, 2020 ("Commencement Date"), unless otherwise modified by written agreement of the parties.

### 2. Premises

Landlord leases to Tenant, and Tenant leases from Landlord, the commercial premises, lodging facilities, support facilities, improvements, parking areas, access areas, utility areas, fixtures, and related appurtenances owned, managed, or controlled by Landlord and used by Tenant in connection with Tenant's business operations (collectively, the "Premises").

Premises Address / Description: 2665 ABARR DR Loveland Co 80538

The Premises may include treatment support, lodging, recovery support, administrative, transportation, meal service, staffing, parking, storage, and related operational areas used by Tenant in connection with Tenant's business operations, unless specifically excluded in writing.

### 3. Lease Term

This Lease is a month-to-month commercial lease beginning on August 15, 2020.

Either Landlord or Tenant may terminate this Lease by giving the other party at least thirty (30) days' written notice of termination or intent to vacate.

Unless terminated, this Lease shall automatically continue from month to month.

### 4. Permitted Use

Tenant may use the Premises for lawful commercial purposes related to behavioral health, substance abuse treatment, addiction recovery, counseling, outpatient treatment, client support, lodging coordination, sober living support, transportation coordination, meal support, fitness-related transportation, administrative services, and other related healthcare or business activities approved by Landlord.

Tenant shall be responsible for ensuring that Tenant's use complies with all applicable zoning, licensing, building, fire, health, operational, DORA, Behavioral Health Administration, HIPAA, 42 CFR Part 2, and other regulatory requirements.

## 5. Monthly Rent

Tenant shall pay monthly rent to Landlord in accordance with this Section. Rent shall be due on or before the 1st day of each month, unless otherwise agreed in writing.

The parties agree that the minimum monthly rent shall be Fifteen Thousand Dollars ($15,000.00) and the maximum monthly rent shall be Thirty-Five Thousand Dollars ($35,000.00), inclusive of the rent cap provisions stated in this Lease.

### Census-Based Rent Schedule

Monthly rent shall be calculated based on the number of enrolled clients during the applicable month, with rent increasing in equal client-based increments from one (1) enrolled client up to a maximum of fifteen (15) enrolled clients.

For purposes of this Lease, the rent adjustment shall be calculated as follows:

| Enrolled Clients | Monthly Rent |
|---|---:|
| 1 client | $15,000.00 |
| 2 clients | $16,428.57 |
| 3 clients | $17,857.14 |
| 4 clients | $19,285.71 |
| 5 clients | $20,714.29 |
| 6 clients | $22,142.86 |
| 7 clients | $23,571.43 |
| 8 clients | $25,000.00 |
| 9 clients | $26,428.57 |
| 10 clients | $27,857.14 |
| 11 clients | $29,285.71 |
| 12 clients | $30,714.29 |
| 13 clients | $32,142.86 |
| 14 clients | $33,571.43 |
| 15 or more clients | $35,000.00 |

Tenant shall provide Landlord with only de-identified census numbers necessary to calculate rent. Tenant shall not be required to disclose client names, identifying information, treatment records, medical information, substance use disorder records, or other protected health, behavioral health, substance use disorder, or treatment information.

For purposes of calculating monthly rent, "enrolled clients" shall mean the total number of active clients enrolled with Tenant during the applicable month, as determined by Tenant's ordinary business records, client census records, billing records, admission records, or other de-identified enrollment records maintained by Tenant.

In no event shall monthly rent exceed Thirty-Five Thousand Dollars ($35,000.00) per month.

## 6. NNN Expenses

This Lease is intended to be a Triple Net Lease. Tenant shall be responsible for NNN expenses associated with the Premises, including but not limited to:

1. Real estate taxes and assessments;
2. Property insurance;
3. Utilities;
4. Repairs and maintenance;
5. Common area maintenance;
6. Snow removal;
7. Landscaping;
8. Trash service;
9. Janitorial service;
10. Fire monitoring and life-safety systems;
11. Parking lot maintenance;
12. Building systems maintenance; and
13. Any other property operating expenses related to the Premises.

Tenant's total monthly obligation for rent and NNN expenses shall not exceed Thirty-Five Thousand Dollars ($35,000.00) per month, unless otherwise agreed in writing by the parties.

## 7. Independent Contractor Services Agreement

Landlord shall provide or cause to be provided a separate Independent Contractor Services Agreement between Innerbalance Property Management, LLC, as Contractor, and Innerbalance Health Center, LLC, as Customer, in substantially the form attached to this Lease as Exhibit A (the "Services Agreement").

The Services Agreement is intended to address operational support services that may be provided by Contractor to Customer, including lodging, meals, room accommodations, transportation, support staffing, house management, chef services, day staffing, overnight staffing, and related recovery-support services deemed necessary by Customer or Contractor.

The Services Agreement shall be separate from this Lease. However, the parties acknowledge that the services described in the Services Agreement may support Tenant's use of the Premises and Tenant's operation of its business. Nothing in this Lease or the Services Agreement shall be interpreted to create a partnership, joint venture, employment relationship, agency relationship, or clinical services relationship between Landlord, Contractor, Tenant, Customer, or any client.

## 8. Hold Harmless and Indemnification

Tenant, in its capacity as Tenant under this Lease and as Customer under the Services Agreement, shall indemnify, defend, and hold harmless Landlord and Contractor, including Innerbalance Property Management, LLC and its members, managers, employees, contractors, agents, successors, and assigns, from and against any claims, liabilities, damages, losses, costs, attorney fees, expenses, fines, penalties, regulatory actions, demands, or causes of action arising out of or related to:

1. Tenant's or Customer's use or occupancy of the Premises;
2. Tenant's or Customer's business operations;
3. Tenant's or Customer's clients, patients, residents, guests, invitees, employees, contractors, or agents;
4. Services provided or arranged under the Services Agreement, except to the extent caused by Contractor's gross negligence or willful misconduct;

5. Transportation, lodging, meal support, staffing, house management, or related support services;
6. Tenant's or Customer's violation of law, licensing requirements, privacy obligations, or regulatory requirements;
7. Any injury, loss, claim, or dispute involving a client, patient, resident, guest, invitee, employee, contractor, or agent of Tenant or Customer; and
8. Tenant's or Customer's negligence, misconduct, or failure to perform any obligation under this Lease or the Services Agreement.

Landlord and Contractor shall not be liable for Tenant's clinical decisions, client admissions, discharge decisions, treatment plans, medical care, counseling services, billing, regulatory compliance, licensing compliance, or protected health information obligations.

## 9. Payment and Accounting

Tenant shall pay rent and other amounts due to Landlord at the address or payment method designated by Landlord. Landlord and Tenant may reconcile NNN expenses monthly, quarterly, or annually. Tenant shall maintain reasonable records of any NNN expenses paid directly by Tenant.

Amounts owed under the Services Agreement may be invoiced separately from rent unless otherwise agreed in writing.

## 10. Maintenance and Repairs

Tenant shall maintain the Premises in a clean, safe, sanitary, and lawful condition. Tenant shall be responsible for ordinary maintenance, repairs, cleaning, and upkeep related to Tenant's use of the Premises.

Tenant shall be responsible for damage caused by Tenant, Tenant's employees, contractors, clients, guests, invitees, agents, or business operations. Landlord shall be responsible for structural repairs unless caused by Tenant's misuse, negligence, or failure to maintain the Premises.

## 11. Utilities

Tenant shall pay for all utilities and services used at the Premises, including but not limited to gas, electric, water, sewer, trash, internet, phone, security, fire monitoring, and other business services, subject to the monthly cap stated in this Lease unless otherwise agreed in writing.

## 12. Insurance

Tenant shall maintain appropriate insurance coverage for Tenant's business operations, including commercial general liability insurance, professional liability insurance if applicable, property coverage for Tenant's personal property, workers' compensation insurance if required, automobile or transportation-related coverage if applicable, and any additional coverage reasonably required by Landlord or Tenant's licensing obligations.

Tenant shall name Landlord and Contractor as additional insureds on Tenant's commercial general liability policy upon request.

## 13. Compliance With Law

Tenant shall comply with all laws, ordinances, codes, rules, regulations, licenses, permits, and governmental requirements applicable to Tenant's use and operation of the Premises and Tenant's business. Tenant shall be solely responsible for regulatory compliance related to Tenant's business, clients, patients, staff, services, licensed operations, billing, treatment records, and protected information.

## 14. Alterations and Improvements

Tenant shall not make material alterations to the Premises without Landlord's prior written consent. Approved improvements shall be completed in a professional manner and in compliance with applicable permit and code requirements. Unless otherwise agreed in writing, permanent improvements shall become the property of Landlord upon installation.

## 15. Assignment and Subletting

Tenant shall not assign this Lease or sublease the Premises without Landlord's prior written consent.

## 16. Default

Tenant shall be in default if Tenant fails to pay rent or other amounts due, violates this Lease, violates the Services Agreement, fails to maintain insurance, violates applicable law, abandons the Premises, or fails to perform any material lease obligation.

Landlord shall provide written notice of default. Tenant shall have ten (10) days to cure a monetary default and thirty (30) days to cure a non-monetary default, unless the default involves immediate health, safety, licensing, insurance, regulatory, confidentiality, or legal risk.

## 17. Remedies

If Tenant fails to cure a default, Landlord may pursue all remedies available under this Lease and Colorado law, including termination, recovery of possession, unpaid rent, damages, attorney fees, and costs.

## 18. Landlord Access

Landlord may enter the Premises upon reasonable notice for inspection, maintenance, repair, compliance review, insurance purposes, showing the Premises, or other lawful purposes. In an emergency, Landlord may enter without prior notice.

## 19. Confidentiality and Protected Information

Landlord and Contractor acknowledge that Tenant's business may involve protected health information, behavioral health records, substance use disorder treatment records, client files, and other confidential information. Landlord and Contractor shall not request, access, copy, review, or disclose protected client or patient information except as legally permitted and specifically authorized in writing.

Any information provided to Landlord or Contractor for rent calculation, services coordination, lodging, staffing, transportation, meals, or administrative support shall be limited to the minimum necessary information and shall be handled in compliance with applicable privacy laws and Tenant's policies.

## 20. Relationship of Parties

Landlord and Tenant are separate legal entities. Contractor and Customer are separate contracting parties. Nothing in this Lease or the Services Agreement creates a partnership, joint venture, employment relationship, management agreement, clinical services relationship, or agency relationship between the parties.

## 21. Attorney Fees

The prevailing party in any dispute arising out of this Lease or the Services Agreement shall be entitled to recover reasonable attorney fees, court costs, and collection costs.

## 22. Notices

All notices shall be in writing and delivered personally, by certified mail, by recognized overnight courier, or by email if confirmed by the receiving party.

Notices to Landlord shall be sent to:

Innerbalance Property Management, LLC
Address: 2665 ABARR DR Loveland CO 80538
Email: JEROVER@GMAIL.COM

Notices to Tenant shall be sent to:

Innerbalance Health Center, LLC
Address: 1414 W 28TH ST Loveland CO 80538
Email: JEROVER@GMAIL.COM

## 23. Governing Law

This Lease shall be governed by the laws of the State of Colorado. Venue for any dispute shall be in Larimer County, Colorado, unless otherwise required by law.

## 24. Entire Agreement

This Lease, together with the Services Agreement attached as Exhibit A, contains the entire agreement between the parties regarding the Premises and the services described herein and supersedes all prior oral or written agreements regarding the same subject matter. Any amendment must be in writing and signed by both parties.

## 25. Counterparts

This Lease may be signed in counterparts.

### SIGNATURES

| **LANDLORD:** **Innerbalance Property Management, LLC** | **TENANT:** **Innerbalance Health Center, LLC** |
|---|---|
| By: J Eisele | By: J Eisele |
| Name: Joseph Eisele | Name: Joseph Eisele |
| Title: MANAGING MEMBER | Title: MANAGING MEMBER |
| Date: 8-15-2020 | Date: 8-15-2020 |
| | |

# EXHIBIT A

# INDEPENDENT CONTRACTOR SERVICES AGREEMENT

**Innerbalance Property Management, LLC, Contractor**
**Innerbalance Health Center, LLC, Customer**

---

This Independent Contractor Services Agreement ("Agreement") is entered into by and between Innerbalance Property Management, LLC, a Colorado limited liability company ("Contractor"), and Innerbalance Health Center, LLC, a Colorado limited liability company ("Customer"). This Agreement is attached to and incorporated into the Commercial Lease Agreement between the parties to the extent stated therein.

## A1. Independent Contractor Relationship

Contractor is an independent contractor and is not an employee, agent, partner, joint venturer, clinical provider, healthcare provider, or treatment provider of Customer. Contractor shall control the manner and means of providing the non-clinical support services described in this Agreement, subject to Customer's reasonable coordination needs and applicable law.

## A2. Services

Contractor may provide or coordinate non-clinical support services for Customer, including but not limited to:

1. Lodging support;
2. Up to three (3) meals per day, when applicable;
3. Room accommodations;
4. Transportation to and from Innerbalance Health Center;
5. Transportation to and from a fitness gym;
6. Transportation to and from other deemed necessary locations;
7. Allocation of support staff;
8. House manager services;
9. Chef or meal preparation services;
10. Day staffing;
11. Overnight staffing; and
12. Other related lodging, transportation, meal, staffing, and recovery-support services approved by the parties.

Services are intended to be non-clinical support services only. Contractor shall not be responsible for clinical treatment, counseling, medical care, medication management, admissions decisions, discharge decisions, treatment planning, utilization review, billing, or regulatory duties belonging to Customer.

## A3. Service Coordination

Customer shall coordinate with Contractor regarding the number of clients or participants requiring lodging, meals, room accommodations, transportation, staffing, or related support services. Customer shall provide only the minimum necessary information required to coordinate services and shall avoid disclosing protected health information unless legally permitted and operationally necessary.

## A4. Fees and Payment

Fees for services shall be invoiced as agreed by the parties in writing, through course of dealing, or through the parties' accounting records. Unless otherwise agreed in writing, fees under this Agreement are separate from rent and NNN expenses owed under the Lease.

Service Fee / Billing Method: Check.

## A5. Customer Responsibilities

Customer shall be responsible for all clinical, healthcare, behavioral health, licensing, client admission, treatment, discharge, billing, privacy, and regulatory obligations related to Customer's business. Customer shall also be responsible for communicating operational requirements to Contractor in a timely and lawful manner.

## A6. Contractor Responsibilities

Contractor shall use commercially reasonable efforts to provide or coordinate the support services described in this Agreement. Contractor may use employees, subcontractors, managers, chefs, drivers, staffing providers, or other personnel to perform the services, provided that Contractor remains responsible for coordinating the services described herein.

## A7. Transportation

Transportation services may include transportation to and from Innerbalance Health Center, fitness gyms, medical appointments, recovery-support activities, shopping, airport or bus locations, or other locations deemed necessary by Customer or Contractor. Customer acknowledges that transportation involves inherent risks and agrees to indemnify Contractor as provided in this Agreement.

## A8. Meals and Lodging

Meal services may include up to three (3) meals per day when applicable. Room accommodations may include shared or private rooms, bedding, general household access, kitchen access, bathrooms, common areas, and reasonable house rules established by Contractor or the property operator.

## A9. Staffing

Contractor may allocate support staff, including house managers, chefs, day staff, overnight staff, or other support personnel. Such personnel shall provide non-clinical support only unless otherwise separately credentialed, licensed, and contracted in writing.

## A10. Hold Harmless and Indemnification

Customer shall indemnify, defend, and hold harmless Contractor, Landlord, and their members, managers, employees, contractors, agents, successors, and assigns from and against any claims, liabilities, damages, losses, costs, attorney fees, expenses, fines, penalties, regulatory actions, demands, or causes of action arising out of or related to Customer's clients, patients, residents, guests, invitees, employees, contractors, operations, clinical services, regulatory obligations, privacy obligations, or use of the services, except to the extent caused by Contractor's gross negligence or willful misconduct.

## A11. Insurance

Customer shall maintain insurance reasonably necessary for Customer's operations and the services contemplated by this Agreement, including commercial general liability, professional liability where applicable, workers' compensation if required, and other coverage reasonably required by Contractor or applicable law. Customer shall name Contractor as an additional insured upon request.

## A12. Confidentiality

Contractor shall use commercially reasonable efforts to protect confidential information received from Customer. Contractor shall not request or access protected health information except as legally permitted and reasonably necessary to coordinate lodging, meals, transportation, staffing, or related support services.

## A13. Term and Termination

This Agreement shall continue on a month-to-month basis and may be terminated by either party upon thirty (30) days' written notice, unless terminated earlier due to default, legal risk, licensing risk, safety risk, nonpayment, or mutual written agreement.

## A14. Governing Law

This Agreement shall be governed by the laws of the State of Colorado. Venue for any dispute shall be in Larimer County, Colorado, unless otherwise required by law.

### EXHIBIT A SIGNATURES

| **CONTRACTOR:** **Innerbalance Property Management, LLC** | **CUSTOMER:** **Innerbalance Health Center, LLC** |
|---|---|
| By: J Eisele | By: J Eisele |
| Name: Joseph Eisele | Name: Joseph Eisele |
| Title: MANAGING Member | Title: MANAGING Member |
| Date: 8-15-2020 | Date: 8-15-2020 |
| | |